# STATE OF NORTH DAKOTA, Respondent, v. CLIFFORD A. McCARTY, Appellant.

## (182 N. W. 754.)

**Criminal law — evidence sufficiently corroborating accomplice to require submission to jury in larceny prosecution.**

1. In a prosecution for larceny of five calves, § 10,841, requiring, as corroboration of an accomplice, such other evidence as tends to connect the defendant with the commission of the offense, testimony of recent possession of stolen property by accused, attempting to discourage the arrest of the accomplice, and claiming to the wife of the accomplice that he has matters fixed up with the owner of the calves at a cost of $300, etc., held sufficient corroboration to require submission of the case to the jury.

**Larceny — recent unexplained possession of stolen property tends to show guilt.**

2. In a prosecution for larceny, an instruction "that the recent possession of stolen property, unless satisfactorily explained, is a circumstance tending to show the guilt of the defendant, and must be taken with the other evidence in the case to determine his guilt or innocence," is held to be a correct statement of the law, and is in harmony with the recent decision of this court.

**Criminal law — instruction as to guilt of one aiding in commission of crime not error when considered with other instructions.**

3. An instruction that if the defendant advised and encouraged the witnesses "to commit the crime charged in the information, or aided or abetted in the commission of such crime," he would be guilty as principal, though not sufficiently in the alternative, is not ground for reversal when considered in connection with other parts of the instruction.

---

Note.—On larceny or embezzlement as affected by belief in right to property taken, see note in 41 L.R.A.(N.S.) 549.

On possession of recently stolen property as evidence of burglary or larceny, see note in 12 L.R.A.(N.S.) 199.

**Criminal law — instruction that named witnesses were accomplices can be given only under undisputed evidence.**

4. An instruction "that the witnesses Al Metzler and John Bergstad, who testified for the state in this case, are accomplices in the crime charged," is erroneous under the disputed evidence on the subject. Such instruction can properly be given only in cases where the evidence as to the accomplices is not in dispute. But taken in connection with the whole charge, it was error without prejudice.

**Larceny — refusal of instruction to acquit if defendant came innocently into possession of the stolen property held error.**

5. In a prosecution for larceny of five calves, under defense of having purchased the same in good faith, and without knowledge of their being stolen, *held*, to refuse an instruction that if defendant came innocently into possession of the calves, he should be acquitted, to be prejudicial error.

**Larceny — defendant having innocently obtained possession of property and later conceived intent to convert to his own use not guilty.**

6. In a prosecution for larceny where the defense was that the defendant had purchased the property in good faith, the special prosecutor argued to the jury that the defendant might be convicted if at any time within three years subsequent to obtaining possession he conceived the idea or formed an intent to appropriate the property to his own use; and the court charged the jury that if the defendant obtained the property without fraud or deceit and, after taking it into his possession, conceived the intent to convert it to his own use, it was their duty to find the defendant guilty. *Held*, this is prejudicial error.

**Larceny — statute as to finding and appropriating lost property held inapplicable to larceny.**

7. Section 9914, Compiled Laws, providing the circumstances under which one may be guilty of larceny for finding and appropriating lost property, is not applicable to a prosecution for larceny, under defense of ownership through purchase in good faith, since this section relates in terms to property lost and found.

Opinion filed April 21, 1921.

Appeal from District Court, Stark County, *Frank T. Lembke*, J. Clifford A. McCarty was convicted of grand larceny and appeals. Reversed.

*H. E. Haney*, for appellant.

If defendant did so obtain the property, without fraud or deceit, he is not, under the law, guilty of larceny, no matter what intent he may have formed thereafter. This is well settled by the authorities.

2 Sackett, Instructions, §§ 30–32; Starch v. State, 63 Ind. 283, 29 Am. Rep. 762; State v. Meldrum, 70 Pac. 526.

The court invaded the province of the jury in assuming and informing them that in his mind the crime charged had been committed, thus taking from the jury the important province of ascertaining this fact. 12 Cyc. 445, 449; Keivner v. People, 43 Pac. 1047; State v. Reilly, 25 N. D. 339, 361; Sackett, Instructions, pp. 771–774.

*J. P. Cain,* Special Prosecutor, *Wm. Lemke,* Attorney General, and *Walter Ray,* State's Attorney, for respondent.

That larceny may be accomplished by an open taking is upheld in the case of State v. Powell, 4 L.R.A. 291 and note on p. 292; 17 R. C. L. p. 11, § 10; 11 Whart. Crim. Law, §§ 1152–1155.

For the law of this state in regard to who are principals in the commission of any crime so committed, see: State v. Rosencranz, 40 N. D. 93.

ENGLERT, District J. The defendant was convicted of the crime of grand larceny and appeals.

The information charged that the defendant, "did by fraud or stealth, wilfully, unlawfully, and feloniously, take, steal, carry or drive away," five calves, belonging to Edward Jossucks, without his consent and "with intent then and there to deprive the owner thereof."

To enable an intelligent understanding and disposition of the questions raised on this appeal, it becomes necessary to set forth the material substance of the state's evidence.

Al Metzler testified that in the fall of 1918 he had several talks with the defendant, C. A. McCarty, about stealing some unbranded calves for him. On November 16th, 1919, Metzler and one John Bergstad, who also testified for the state, met the defendant at his office in Belfield, North Dakota, and after some talk, defendant said he would pay Al Metzler $20 per head for all unbranded calves he could steal and bring to him. That defendant at that time claimed that Mr. Jossucks was about to ship cattle, and that his calves were not yet branded. So that night Metzler and Bergstad went to the Jossucks ranch and stole six calves and with them came seven head of grown-up cattle, and put them in defendant's pasture on his ranch on the morning of November 17th, 1918. Metzler then went to his home and had his

wife write a note to defendant, informing him that he, Metzler, had delivered six calves by placing them in his pasture, and sent the note to defendant with a boy named James Gilman. About the 19th, Metzler saw defendant and asked him for the money; that defendant claimed to have seen the calves and refused to pay for one because it bore Goodacre's brand. He did pay Metzler $20 per head for the other five. That in December or January following defendant asked Metzler to buy a calf from Goodacre and secure a blank bill of sale so that the description of the calf on the ranch could be inserted. But Goodacre refused. Both Metzler and Bergstad admitted having stolen a drove of horses, and cattle, and that they had sold them to others, besides the ones in question.

Mrs. Metzler testified to having written the note to defendant, and that the boy carried it to him. She also testified that defendant saw her about the time warrants were issued for the arrest of Metzler and Bergstad, and that he told her to rest easy and not to worry for he had seen Jossucks, settled the matter with him at a cost of $300 and that "he would not take it to court."

Mr. Jossucks, owner of the calves, testified that he first learned of the whereabouts of the calves from the defendant; that defendant claimed at that time to have purchased the calves from Al Metzler; that owing to their long hair at the time he purchased them, he could not tell that any of them bore Jossucks' brand; that when they shed off in the spring, he noticed two or three bore Jossucks' brand; that defendant offered to return the calves to or pay Jossucks for them; that he told Jossucks about having his calves sometime in March or April, 1919; that when Jossucks suggested having Metzled arrested defendant said to him "not to do it, he would get him to leave the country, and if he didn't leave the country, then he will have him arrested."

C. P. Jacobson, foreman on defendant's ranch, and third owner, testified that defendant told him to "drive them (the big cattle) towards the brakes and they would go home." That this was in a northeasterly direction and towards the Jossucks ranch; that they returned a couple of days after; that defendant and his wife drove them off in the same direction. After defendant discovered that some of the calves bore Jossucks' brand, he told Jacobson not to brand them with the ranch brand, but that he, Jacobson, branded them about May 1st, with-

out the knowledge of the defendant. Defendant had told him in the spring of 1919 that he had found the owner of the calves; that they had never been returned to Jossucks and that they were still on defendant's ranch.

Without quoting any of the testimony of and for the defense, it is enough to say that he denied being a party to the stealing, and as an affirmative defense he claims to have purchased the calves in good faith from Al Metzler.

1. Defendant contended that the verdict is contrary to the law and the evidence, because the state offered no credible evidence corroborating the testimony of the accomplices which tended to connect appellant "with the taking of the property in question."

That Al Metzler and John Bergstad, if their testimony is true, were accomplices, is admitted by the state. Under the law of this state, the defendant cannot be convicted upon their evidence alone. Comp. Laws 1913, § 10,841.

In this case the evidence, which is entirely independent of the testimony given by the accomplices, shows that the property was found in possession of the defendant shortly after it was stolen. A couple of days after the larceny the defendant drove the big cattle in the general direction of their home, the Jossucks ranch. When Jossucks came to see the calves and spoke of having Metzler arrested, defendant told him not to, and that he would drive Metzler out of the country. About the time warrants were issued for the arrest of Metzler and Bergstad, defendant told Mrs. Metzler not to worry, that he had matters fixed up with Jossucks and that "he would not take it to court."

This evidence is sufficient to satisfy the statute. Its weight and credibility is for the jury.

2. The defendant complains of the following instruction given by the trial court:

"The court further instructs you that the recent possession of stolen property, unless satisfactorily explained, is a circumstance tending to show the guilt of the defendant, and must be taken with the other evidence in this case to determine his guilt or innocence."

This instruction is in accord with the general rule on the subject (17 R. C. L. 71, § 76), and is in harmony with the recent decision of this court. State v. Ross, 46 N. D. 167, 179 N. W. 993.

3. Error is assigned on the following instructions:

(1) "The court instructs the jury that if they believe from the evidence beyond a reasonable doubt, that the defendant, Clifford A. McCarty, at the time alleged in the information, advised and encouraged the witnesses Al Metzler and John Bergstad to commit the crime charged in the information, or aided or abetted in the commission of such crime, then Clifford A. McCarty is as guilty as though he actually stole the property alleged to have been taken in the information."

(2) "You are further charged that the witnesses, Al Metzler and John Bergstad, who testified for the state in this case, are accomplices in the crime charged."

Each of these two instructions was taken from a different part of the general instruction given by the trial court on the subject.

It is contended that by these instructions the court assumed that the crime charged in the information had been committed, and so informed the jury. Each of these two instructions standing alone is subject to criticism. State v. Reilly, 25 N. D. 339, 141 N. W. 720. But in other parts of its general charge, the trial court told the jury that the information "merely states the charge," and "outlines the issues to be determined from the evidence," and from the reading of the entire charge, we are satisfied that the jury was not misled, and at most, it was error without prejudice.

4. The evidence as to the accomplices was in dispute. Such an instruction can only be given where there is no dispute in the evidence. Territory v. West, 14 N. M. 546, 99 Pac. 343. But when considered with the rest of the instruction, it may be considered error without prejudice.

The special prosecutor argued at some length to the jury that even though defendant came innocently into possession of the calves in the first instance, if at any time within three years subsequent thereto, he conceived the idea or formed an intent to appropriate the same to his own use, and he did so, and now has them, he would be guilty of larceny. Counsel for defendant objected to this argument both at the commencement and conclusion thereof, and asked the court to instruct the jury to disregard the same. The objections were overruled and the request denied.

5. Counsel for defendant then requested the court to instruct the

jury "that if the defendant came innocently into the possession of these calves that their verdict in that event should be not guilty."

This request was refused, and defendant contends that such refusal was prejudicial error. The defendant claimed to have purchased the calves in good faith, and under such defense it was the duty of the trial court to give this instruction or one of similar import. Peterson v. People, 65 Colo. 106, 173 Pac. 876; State v. Crossen, 77 Wash. 438, 137 Pac. 1030; State v. Riggs, 8 Idaho, 630, 70 Pac. 947; People v. Morino, 85 Cal. 515, 24 Pac. 892; Ward v. State, 70 Ark. 204, 66 S. W. 928; Ludlum v. State, 13 Ala. App. 278, 69 So. 255; Yarbrough v. State, 115 Ala. 92, 22 So. 534; Varas v. State, 41 Tex. 527; 25 Cyc. 149 (IV.).

6. The appellant claims that the trial court erred to the prejudice of the defendant in refusing to give the following requested instruction, and in giving the one it did on the subject: "That if they (the jury) find that the defendant, McCarty, came innocently into possession of this property at the time he was accused of having stolen the same— any act done or performed by McCarty subsequent to that time cannot be construed into a larceny of the property." This instruction was refused, and in lieu thereof the following instruction was given: "The court further instructs you, as a matter of law, that if the defendant obtained the property without fraud or deceit and after taking the said property into his possession afterwards conceived the intent to convert the property to his own use, then it is your duty to find the defendant guilty."

The correctness of appellant's position as to the law on the subject cannot with propriety be questioned. The cases above cited are directly in point. In addition to those the following announce the rule in unmistakable language: Wilson v. State, 96 Ark. 148, 41 L.R.A. (N.S.) 549, 131 S. W. 336, Ann. Cas. 1912B, 339; Leak v. State, — Tex. Crim. Rep. —, 97 S. W. 476; Veasly v. State, — Tex. Crim. Rep. —, 85 S. W. 274; People v. Call, 1 Denio, 120, 43 Am. Dec. 655; Rex v. Charlewood, 1 Leach, C. L. 409, 2 East, P. C. 689, 8 Eng. Rul. Cas. 81.

In the case of Wilson v. State, supra, the trial court gave this instruction: "If he took it innocently, believing it was his, and, learn-

ing afterwards that it was not his property, converted it to his own use with the felonious intent to deprive the owner of it, when he knew it was not his own property, he would be guilty." Because of this instruction the court granted a new trial, saying: "If a person takes property in good faith, under an honest belief that he is the owner, it does not constitute larceny for the felonious intent is lacking. The felonious intent must, in order to constitute larceny, exist at the time of the taking; a subsequent formation of such an intent is not sufficient. So, if the taking is under an honest belief of ownership, there being no felonious intent to steal at that time, the fact that such an intent is formed after ascertaining that another person is the true owner does not make it larceny."

7. But the state contends that the court's instruction is justified under § 9914 of the Complied Laws, which reads: "One who finds lost property under circumstances which give him knowledge or means of inquiry as to the true owner, and who appropriates such property to his own use, or to the use of another person who is not entitled thereto, without having made such effort to find the owner and restore the property to him, as the circumstances render reasonable and just, is guilty of larceny." Neither the state nor defendant has cited any cases in support of or in opposition to this contention. The all conclusive answer to this argument is that it is nowhere claimed that defendant found and appropriated lost property. The evidence conclusively shows that the calves were not lost, but were stolen by Metzler and Bergstad, and by them turned into the pasture belonging to defendant. The defendant claimed that he purchased them from these parties and paid $20 per head therefor. This is admitted by the state's witnesses, but they claim that he was a party to the stealing, and that he advised and encouraged Metzler and Bergstad to steal them for defendant at the price mentioned. A mere glance at the charge itself is sufficient to advise that it was not prepared to meet the requirements of this statute. This section of the statute is by its very terms applicable only to "one who finds lost property" and appropriates the same as therein provided. The supreme court of California has construed this identical section in People v. Divine, 95 Cal. 227, 30 Pac. 378. The rule is thus stated in the syllabus of that case: "Section 485 of the Penal Code, providing that one who finds

lost property under circumstances which give him knowledge or means of inquiry as to the true owner, and who appropriates such property, without trying to find the owner and restore the property to him, is guilty of larceny, relates in terms to property lost and found, and does not apply to a case where property comes into the possession of a party who does not know or suspect it to be the property of another; and an instruction based on that section, given in such a case, where there is no evidence of the finding of any lost property, is prejudicially erroneous." State v. Boyd, 36 Minn. 538, 32 N. W. 780. It is apparent that this section merely enunciates a rule of evidence, and hence there must be some evidence on the part of either the state or the defendant that he found and appropriated lost property in order to justify an instruction under said statute.

But is is suggested that the error is technical and not substantial, and hence does not justify the granting of a new trial.

Adhering to the rule of this court and the statutes of this state that a case shall not be reversed upon technicalities merely, we feel that the error complained of is not technical but substantial. By the refusal of the requested instruction, the court refused, in the presence of the jury, as the record shows, to submit the defendant's only defense. By the instruction given, the court injected an issue into the case which is not the law. It invited the jury to convict on evidence which does not constitute the crime of larceny. Under the evidence in this case, it was much easier to convict on subsequent appropriation of the calves than on the crime charged in the information. The defendant's theory of his defense, namely, that he claimed to have purchased the calves and thus came innocently and honestly into possession of them was in no way submitted to the jury by the trial court in its instruction. Substantial rights of one accused of crime cannot be thus corrupted, frittered away, or ignored under the guise of their being mere technicalities. If, during the course of the trial, evidence is erroneously admitted or rejected, but after a full and fair consideration of the whole record the court can conscientiously say that there has been no miscarriage of justice, then such error would be a mere technicality, and would be error without prejudice. So, if an instruction on a proposition of law is in some respects faulty or erroneous in the abstract, if it does not involve the jurisdiction of the

court, material issues, or substantial rights of a party, it would not be ground for a reversal. But it is universally held that if a principle of law has been violated during the trial, which involves the jurisdiction of the court, material issues, or which affects the substantial rights of the party complaining, it will not constitute a technicality, but reversible error.

For refusal to give the requested instructions, and giving the one it did, the order and judgment of the trial court must be reversed and a new trial granted. It is so ordered.

BIRDZELL and BRONSON, JJ., concur.

Mr. Justice CHRISTIANSON, deeming himself disqualified, did not participate, Hon. M. J. ENGLERT of the First Judicial District, sitting in his stead.

GRACE, J. (specially concurring). The trial court gave the following instruction, which the defendant assigns as error, viz.:

"The court further instructs you that the recent possession of stolen property, unless satisfactorily explained, is a circumstance tending to show the guilt of the defendant, and must be taken with the other evidence in the case to determine his guilt or innocence."

In the case of State v. Ross, 46 N. D. 167, 179 N. W. 993, we said of a similar instruction:

"The instruction was entirely too broad in its language, and must have had a far-reaching and prejudicial effect on the minds of the jurors. If the property were found in the possession of the defendant, shortly after the same was stolen, that was a fact or circumstance, considered in connection with other competent proof and the whole testimony, from which the jury could draw an inference of defendant's guilt. This is a wholly different matter than where it is, in effect, instructed by the court that the possession of the personal property, shortly after it has been stolen, is a presumption of guilt."

We are convinced that such an instruction is an invasion of the province of the jury. The giving of that instruction in this case was reversible error.

The trial court refused to give the following instruction, requested by defendant, viz.:

"That if the defendant came innocently into the possession of these calves that the verdict in that event should be not guilty."

We agree with Judge Englert in his holding that the refusal to give this instruction was reversible error.

By reason of the above errors, we agree the judgment appealed from should be reversed and a new trial granted.

ROBINSON, Ch. J. (dissenting). The charge against defendant is that in November, 1918, in Billings county, he stole five cows, each of the value of $20, the property of Edward Jossucks. The defense was that he had honestly purchased the stolen cows; but it was an obvious sham. He resorted to all devices for delaying the trial, took changes of venue, hired a lawyer in the legislature when in special session. Yet, in June, 1920, he was convicted and sentenced to five years. He appealed to the pardon board and then to this court, and is given a new trial, which may be as good as a pardon, because witnesses die, forget, and migrate to distant lands the same as birds of passage. Without a word concerning the merits of the case, a new trial is given on the ground that the court erred by refusing to instruct the jury that if defendant came innocently into possession of the property, converted the same to his own use, it is not larceny. Now the point I wish to make is that the defense of an innocent possession or an honest purchase is a mere sham. The evidence shows beyond dispute that the defendant contracted with the two actual stealers to pay them $20 a head for all the unbranded calves they could bring to him. When they concluded the contract it was late in the evening. The darkness was falling, and they at once set out on horses for Edward Jossucks' place and took from him six calves, one branded, and five unbranded, and during the night drove them into the enclosure of defendant as per his instructions. Then they rode home while it was still night and sent a note to defendant that they had put the six calves in his enclosure. He promptly went, saw the calves, saw that one was branded, refused to pay for it, but paid the stealers $100. Each of the two actual stealers testified positively, circumstantially, and convincingly to the contract with defendant and to all the details of the stealing. The defendant knew well that the stealers did not own the calves or claim to own them. He paid them and asked them no questions, not a word as to how they

came by the calves. Then there was plenty of other convincing evidence besides that of the mother cows and the ox which came with them. The mother cows refused to be separated from their calves and followed after them or with them, and when the calves were put into defendant's enclosure the cows remained on the outside, each bellowing and plainly showing that its calf had been stolen. The cows were the best witnesses, and they were not accomplices. When defendant received the note he went immediately, saw the calves, saw the cows, knew well that the bunch had been taken from someone in the vicinity. Yet he did not use the 'phone, the automobile, or any means to ascertain the owner of the animals. He drove the cows toward their home, perhaps a mile or two; but the cows came back to the calves, and the next day he and his wife got on their saddle horses and drove the cows and the ox a distance of several miles from his home, and that was the last of them. Doubtless they fell into the hands of some good cattle rustler. On the whole record it clearly appears that the defense of an honest purchase or an honest possession is an obvious sham. From the beginning to the end, from the time defendant set eyes on the calves and the cows, his every act, both in court and out of court, has been that of a guilty person. In a case of this kind a new trial is a serious matter. It is sure to make the people a great amount of cost. It is sure to delay, if not to defeat, justice. Hence it should not be allowed where there is no reasonable doubt concerning the guilt of the accused. And the judges, as well as the jury, are supposed to be fairly competent to read the record and to judge of what is or is not a reasonable doubt. A new trial, regardless of the guilt or the innocence of the accused, may well defeat justice. It may well bring into contempt the administration of the law. While in such a case the theory of a new trial may be very nice and in accordance with old time reasoning, in practice it is dead wrong and contrary to common sense.