SCRANTON GRAIN COMPANY, a corporation, Plaintiff and Appellant,

v.

LUBBOCK MACHINE & SUPPLY COMPANY, a corporation, Lubbock Manufacturing Company, Inc., a corporation, Fargo Foundry Steel & Manufacturing Co., a corporation, and Scranton Equity Exchange, a corporation, Defendants.

ROPER HYDRAULICS, INC., a corporation, and Roper Industries, Inc., a corporation, Defendants and Respondents,

v.

LUBBOCK MACHINE & SUPPLY COMPANY, a corporation, Defendant and Third-Party Plaintiff,

v.

L. P. GAS TRANSPORT CO., Carl J. Austad & Son, a corporation, and Scranton Equity Exchange, a cooperative association, Third-Party Defendants.

Civ. No. 8658.

Supreme Court of North Dakota.

March 30, 1971.

Rehearing Denied May 13, 1971.

See also N.D., 175 N.W.2d 656.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, and Heineke, Schrader, Marsch & Cuncannan, Chicago, Ill., for plaintiff and appellant.

Zuger, Bucklin, Kelsch & Zuger, Bismarck, for defendants and respondents.

PAULSON, Judge.

The essential facts of this case were stated by this court in Scranton Grain Co. v. Lubbock Machine & Supply Co. (and others, including Roper Hydraulics, Inc., and Roper Industries, Inc.), 167 N.W.2d 748, at 749–750 (N.D.1969), as follows:

"This action was commenced by the plaintiff for damages which it claims to have suffered because of the explosion of a transport truck belonging to the defendant Carl J. Austad & Son (Austad), which truck was delivering propane gas to the defendant Scranton Equity Exchange. The plaintiff alleges that such explosion was due in part to a defective fuel pump on the gas transport truck. The fuel pump in question had been sold to Austad by Fargo Foundry, an independent business concern located in Fargo, North Dakota. It had been manufactured by the defendants Roper Hydraulics, Inc., and Roper Industries, Inc. (Roper), and sold by them to Fargo Foundry, such sale being made in the State of Illinois. Fargo Foundry in turn sold it new to the defendant Austad. It is conceded that neither Roper Hydraulics nor Roper Industries has been admitted to do business in the State of North Dakota.

"Roper maintained a sales manager for an area which included the States of Minnesota, North Dakota, South Dakota, and Montana. This sales manager lived in Minneapolis, Minnesota. Under the provisions of his written contract with Roper, he was required to use his best efforts to promote the sale of Roper products in the area assigned to him. He further was required to appoint, train, and develop distributors in his territory. He was not to promote the sale of pump products which are competitive to Roper products, and he was required, at the time of the execution of the contract, to notify Roper of any lines of products he was selling and, under the terms of the agreement, he was to keep Roper informed of any change in the sales representations which he maintained for such other products.

"Such sales manager was required to maintain an office in the territory to be served by him, which office was located in Minneapolis. The management and operation of such sales office was entirely the responsibility of the sales manager, and Roper was not to be liable for any expenses incurred in the operation of such office, the contract specifically providing:

'* . * * it being understood that the District Sales Manager is carrying out this agreement as an independent operation and not as a branch office of Roper; * * *'

The contract also provided:

'(1) All sales of Roper pump products made by you shall be on orders taken in the name of Roper. Final acceptance of

said orders shall be on the approval of Roper at its main office at Rockford, Illinois, and Roper reserves the right to refuse to accept orders because of credit rating or for other valid reasons.'

"The sales manager, who maintained his residence in Minneapolis, called on the defendant Fargo Foundry three or four times each year, including the year 1960 when the pump in question was sold to Fargo Foundry, and the year 1961 when the explosion in question occurred. During such visits, the sales manager would solicit and take orders for pumps manufactured by Roper. These orders thereafter were sent to Roper in Illinois to be approved and filled. The sales manager also supplied Fargo Foundry with advertising material for Roper pumps.

"One of the pumps sold to Fargo Foundry thereafter was sold as a new pump by Fargo Foundry to the defendant Austad and was involved, in June of 1961, in the explosion out of which this action arose. The explosion occurred while Austad was unloading propane gas on the premises of the defendant Scranton Equity Exchange. The explosion damaged the plaintiff's elevators and contents in the alleged amount of $375,000.

"Service of process was made upon the defendants Roper as foreign corporations, by mailing a copy of the summons and complaint to Roper Industries, Inc., 340 Blackhawk Park Avenue, Rockford, Illinois, and to Roper Hydraulics, Inc., 340 Blackhawk Park Avenue, Rockford, Illinois, postage paid, certified mail, return receipt requested.

"This service, it is asserted, gave the court jurisdiction over the defendants Roper under that portion of Section 10–22–10, North Dakota Century Code, which reads:

'Whenever a claim shall arise out of business transacted in this state by a foreign corporation transacting business without a certificate of authority, service of process may be made * * * by

mailing a copy thereof to the defendant corporation by registered or certified mail at its last known post office address.'

"The defendants thereupon made a Rule 12 [North Dakota Rules of Civil Procedure] motion to dismiss the complaint and to quash the service of summons, on the ground and for the reason that the court lacked jurisdiction over the defendants and that service of process was insufficient to give the court jurisdiction over them. The trial court, the Honorable Clifford Jansonius presiding, after hearing granted the motion and dismissed the action as to the defendants Roper Hydraulics, Inc., and Roper Industries, Inc. Since the court had not acquired jurisdiction over the defendants Roper, it also dismissed the cross-complaint which had been served upon the defendants Roper by the defendant Scranton Equity Exchange.

"From the order dismissing the action and quashing the service of summons, the plaintiff and the cross-appellant, Scranton Equity Exchange, have taken this appeal, demanding trial de novo."

In affirming the district court, this court, in paragraphs 2 and 3 of the syllabus in Scranton Grain Co. v. Lubbock Machine & Supply Co., *supra* 167 N.W.2d at 749, held:

"2. Where a foreign corporation conducts no activity in the State of North Dakota except to ship its pumps into the State on receipt of orders from an independent dealer in North Dakota, and where such orders must be approved by the foreign corporation at its office in Illinois, the shipping of such pumps into North Dakota does not constitute doing business in this State.

"3. Solicitation of business in this State by an independent dealer for sale of pumps manufactured by a foreign corporation does not constitute doing business in North Dakota where such foreign corporation conducted no activity in this State except to ship its pumps into the

State on orders sent to it by such independent dealer, which orders were required to be approved by the foreign corporation in Illinois. The fact that such foreign corporation had a sales representative call on the independent dealer three or four times each year does not change this fact, where the foreign corporation has no control or authority over such independent dealer."

Chapter 28–06.1, N.D.C.C., Service of Process On and Jurisdiction Over Nonresidents, became effective on July 1, 1969, after having been enacted by the 1969 Legislature of North Dakota. This chapter is commonly known as the "long-arm statute". The sections in this chapter are:

"28–06.1–01. Definition of person— As used in this chapter, the word 'person', whether or not a citizen or resident of this state, and whether or not organized under the laws of this state includes an individual whether operating in his own name or under his trade name, an individual's agent or personal representative, a corporation, a business trust, an estate, a trust, a partnership, an unincorporated association, and any two or more persons having a joint or common interest or any other legal or commercial entity.

"28–06.1–02. Subject to jurisdiction.— Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing personally, through an employee, or through an agent, of any of the following acts:

"1. The transaction of any business within the state.

"2. The commission of any act which results in accrual within this state of a tort action.

"3. The ownership, use, or possession of any property, or of any interest therein, situated within this state.

"4. Contracting to insure any person, property, or risk located within this state at the time of contracting.

"5. Entering into a contract for services to be rendered or for materials to be furnished in this state by such person.

"6. Acting as director, manager, trustee, or other officer of any corporation organized under the laws of or having its principal place of business within this state, or as executor or administrator of any estate within this state.

"28–06.1–03. Acquisition of jurisdiction.—Service of process upon the persons subject to this chapter may be made by service outside this state in the same manner provided for service within this state with the same force and effect as though service had been made within this state."

Service of process was made on October 6, 1969, upon the respondents outside the state of North Dakota, pursuant to Chapter 28–06.1, N.D.C.C. In the trial court, Roper Hydraulics, Inc. and Roper Industries, Inc. [hereinafter called Roper], moved to dismiss the action or quash such service. In a memorandum opinion dated January 29, 1970, at Bismarck, North Dakota, authored by the Honorable Clifford Jansonius, the motion to quash service was granted. The reasoning of the trial court was that § 28–06.1–02, N.D.C.C. was only to apply prospectively and had no retrospective application. In view of the above reasoning, the trial court did not rule on the issue of the constitutionality of the provisions of § 28–06.1–02, N.D.C.C. On February 15, 1970, Judge Jansonius, the trial judge, ordered the October 6, 1969 motion of Roper granted. Scranton Grain has appealed to this court from that order.

The issues in the case at bar are as follows:

1. Is § 28–06.1–02, N.D.C.C., constitutional?

2. If § 28–06.1–02, N.D.C.C., is constitutional, should it apply retroactively to actions which accrued prior to July 1, 1969?

3. Are the facts in the case at bar within the scope of § 28–06.1–02, N.D. C.C.?

Since a determination of issue 2 might well determine this appeal, we shall first consider whether § 28–06.1–02, N.D.C.C., should apply retroactively to actions which accrued prior to July 1, 1969.

Roper urges that § 1–02–10, N.D.C.C., which states:

"No part of this code is retroactive unless it is expressly declared to be so.",

specifically prohibits any statute being retrospective unless a savings clause has been included as a part of such enactment. There is no savings clause for Chapter 28–06.1, N.D.C.C. Prior statutory enactments of § 1–02–10, N.D.C.C., have existed since § 2 of the Code of Civil Procedure 1877 (Bowen & Kingsbury 1880).

Scranton contends that it is a general rule that statutes which are purely procedural and do not affect substantive rights or impair contract obligations are retrospective unless the contrary appears. This doctrine is stated in 50 Am.Jur., Statutes § 482, pp. 505–506.

"Remedial statutes.—A retrospective law, in a legal sense, is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability, in respect of transactions or considerations already past. Hence, remedial statutes, or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing, do not come within the legal conception of a retrospective law, or the general rule against the retrospective application of statutes. To the contrary, statutes or amendments pertaining to procedure are generally held to operate retrospectively, where the statute or amendment does not contain language clearly showing a contrary intention. Indeed, in the absence of any savings clause, a new law changing a rule of practice is generally regarded as applicable to all cases then pending."

This is supported by 19 A.L.R.3d 140–163. In Craig v. Herzman, 9 N.D. 140, 81 N.W. 288 (1899), in paragraph 2 of the syllabus, this court held:

"2. Such provision, as it relates to procedure only, may be applied in any case tried after its enactment, although the cause of action arose before the enactment. The rule requiring statutes to be given prospective operation only does not apply to statutes relating to procedure."

2 Sutherland Statutory Construction § 2205 (3d ed. Horack) p. 122, supports this exception, where it is stated:

"Certain rights have been held not 'vested.' Thus there is no vested right in a particular remedy or procedure so long as an adequate remedy exists. The right to be sued at one's domicile is not a vested right * * *"

In discussing the various States' long-arm statutes, in 2 Moore's Federal Practice (2d ed.) ¶ 4.41–1(3), p. 1291.56, it is stated:

"These statutes are generally held to apply retroactively to cases arising prior to their adoption, since they are remedial in character."

Notwithstanding the holdings cited by Scranton we are in this State governed by a specific statutory authority which provides for no exception in the case at bar. A savings clause was not made a part of § 28–06.1–02, N.D.C.C. The language of the statute, that is § 1–02–10, N.D.C.C., is absolute and definite. We are accordingly compelled to follow the mandate of the Legislature and determine that § 28–06.1–02, N.D.C.C., is subject to § 1–02–10, N.D.C.C., and because § 28–06.1–02 does not contain a savings clause it does not have retrospective effect.

Having determined that § 28–06.1–02, N.D.C.C., does not have retrospective effect, it is unnecessary to discuss the other issues raised.

For reasons stated in the opinion, § 28–06.1–02, N.D.C.C., does not have a retrospective effect and, therefore, the order of the district court is affirmed.

. STRUTZ, C. J., and ERICKSTAD, TEIGEN and KNUDSON, JJ., concur.