[File No. 99 Cr.]

STATE OF NORTH DAKOTA, Respondent, v. BEN MARCO-VITZ, Appellant.

(248 N. W. 481.)

460

Opinion filed April 13, 1933. Rehearing denied May 20, 1933.

*William Langer, Robert Birdzell,* and *J. J. Weeks,* for appellant.

*A. J. Gronna,* Attorney General, and *John F. Sullivan,* Special Assistant Attorney General, and *George S. Register,* State's Attorney, for respondent.

BURR, J. The defendant was convicted of the crime of receiving stolen property and was duly sentenced, after his motion in arrest of judgment had been denied.

The defendant moved for a new trial upon the following grounds:

"That the court misdirected the jury in matters of law and erred in the decision of questions of law arising during the course of the trial, as is more fully set forth under the specifications of error hereto attached.

"That the verdict as rendered by the jury is contrary to law and is clearly against the evidence as is more fully set forth in the specifications of error hereto attached.

"That said motion will be based upon the minutes of the Court, the testimony introduced at the trial and all records and files in this action; the statement of the case settled and allowed by the Court, the instructions of the jury and the annexed specifications of error."

This motion was denied and defendant appeals to this court from the order denying the motion for a new trial.

There are twenty-six specifications of error, which, appellant says, present six issues. We deal with these in the order presented.

Appellant says "the information does not state facts sufficient to constitute a public offense, and is fatally defective in other respects." The demurrer interposed says also "that more than one offense is charged therein."

Section 9926 of the Code says: "Every person who buys or receives, in any manner, upon any consideration, any personal property of any value whatsoever, that has been stolen from any other, knowing the same to have been stolen, and with the intent to deprive the owner thereof," is guilty of receiving stolen property. Much argument is devoted to the form of the information, the arrangement of the clauses and the punctuation. The information charges that the "defendant did then and there wilfully, unlawfully and feloniously buy and receive, upon a consideration, personal property, namely: dressed turkeys aggregating approximately forty-three hundred pounds in weight, of value exceeding the sum of four hundred dollars, which said property had been feloniously stolen from another in said Burleigh county, North Dakota, prior thereto, knowing the same to have been stolen, and with intent to deprive the owner thereof, etc."

The comment of this court in State v. Ross, 46 N. D. 167, 169, 179 N. W. 993, is applicable here. "Although the phrases might have been differently arranged, and placed perhaps in closer apposition to the words which some of them modify, nevertheless, it is clear, upon reading the entire information," that the defendant is charged with receiving property that had been stolen from another, knowing it to be, stolen when he received it and receiving it with intent to deprive the owner thereof. Our statutes require the information to contain "a statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended;" and provides that the information.

is sufficient if so charged. Comp. Laws, §§ 10,685 and 10,693. The information in this case is sufficiently similar to the information in the case of State v. Rose, supra, to be governed by the rules set forth therein. The demurrer was properly over-ruled.

The court charged the jury that four of the witnesses were accomplices and appellant says that the testimony of these accomplices is not corroborated sufficiently so as to sustain the verdict.

The main testimony for the State is given by four witnesses whom the trial court, in its charge to the jury, denominated accomplices.

Section 10,841 of the Compiled Laws says: "A conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

The testimony is too lengthy to set forth a summary. The defendant made no serious attempt to show that he had not received stolen property. His defense was directed to the point that at the time he got it he did not know it was stolen. The State was required to prove his guilty knowledge. Three of the State witnesses—Brown, Caya, and Douglas—were confessedly guilty of larceny in the taking of the turkeys from the car. The defendant is not charged with this larceny, or with being connected with the larceny. The State's witness Ditch, without question, was an accomplice, and if the others were accomplices also, one accomplice can not corroborate another.

But the corroboration of accomplices need not include the corroboration of every material fact testified to by the accomplices. These accomplices are witnesses themselves and their credibility is for the jury. Thus it is not necessary that the corroborative testimony be in itself strong enough to support a conviction. The corroboration must be such as to have a tendency to connect the defendant with receiving stolen property knowing it to be stolen when he received it. If there is such corroborative testimony then the jury may from that infer that the accomplices spoke the truth as to other matters—they being the judge of the credibility of the witnesses. See State v. Dodson, 23 N. D. 305, 136 N. W. 789; State v. Reilly, 22 N. D. 353, 133 N. W. 914. The purpose of corroborative testimony is to show that the accomplices are reliable witnesses and worthy of credit; but must be on that phase of

their testimony which tends to connect the defendant with the commission of the crime. See State v. Seitz, 194 Iowa, 1057, 187 N. W. 695; Moody v. State, 13 Okla. Crim. Rep. 327, 164 Pac. 676.

The admissions made by defendant are exceedingly damaging, and his own corroboration of what these accomplices said took place from the time the turkeys were brought to the warehouse until the final payment was made is corroboration on material points and these facts the jury had to consider in determining guilty knowledge.

In State v. Frederickson, 59 N. D. 498, 230 N. W. 733, we had occasion to refer to the circumstances of a case known to the defendant at the time he received the stolen property tending to show guilty knowledge, including any unreasonable statement which the defendant himself might make regarding the property, and held that it was for the jury to pass upon these matters and determine whether the State has proved guilty knowledge. There was sufficient corroboration in what the defendant himself admitted, in what the employee Helle said, in the corroboration by Bill Caya of the accomplices' statement of defendant's quests for Caya to take the matter to the jury. See also State v. McCarty, 47 N. D. 523, 182 N. W. 754. The jury was instructed fully in regard to the necessity for corroboration and the scope. It was for the jury to say whether, in the light of this corroborated testimony they believe these accomplices in regard to the other matters of which they testified.

The defendant says that if he "is guilty of any crime is the crime that of receiving stolen property or that of larceny?" The testimony of those actively concerned in the larceny shows arrangements were made with Ditch whereby they assured themselves of a market for the stolen stuff; and the testimony of Ditch shows this knowledge was communicated to the defendant. Even if it could be claimed there would have been no larceny had there been no market, guilty knowledge and passive ratification of what his partner did is all that is shown on the part of the defendant—a willingness to profit from a crime. If the state's' contention is correct defendant did buy stolen property, knowing it to be stolen, and can not complain because of the choice made by the state. His contention can not be sustained.

The fourth and fifth issues raised deal with the instructions given by the court and the requests refused.

Under these headings there are five errors alleged. The court charged the jury as follows:

"One of the material elements of this crime is knowledge and intent. If all the other elements of the offense are found to exist and you also find that the defendant knew he was receiving stolen property, you should find the defendant guilty, even if he did not know from whom the property had been stolen.

"Guilty knowledge is made out and sufficiently proven to warrant conviction in that respect by proof that the defendant received the property under such circumstances as would reasonably satisfy and convince a man of defendant's age, intelligence and business ability that the turkeys were stolen.

"You are instructed that if you find that all the facts and circumstances surrounding the buying and receiving of the turkeys by the defendant, if you find he received them, were such as would reasonably satisfy and convince a man of defendant's age, intelligence and business ability, that the turkeys were stolen, then you may in your discretion find the defendant had knowledge that said property was stolen property."

The appellant says such instruction is misleading, confusing, ambiguous and contradictory. The criticism of the instruction is based on the theory that a wrong standard is set forth; that the test of guilty knowledge is not what "would reasonably satisfy and convince a man of defendant's age, etc.," or the average man of the class to which the defendant belonged, but knowledge on the part of the defendant.

An examination of the charge as a whole shows the court charged the jury the state was required to prove "that defendant at the said time (the time he received the property) knew the property had been stolen, and said: "In this connection I instruct you, that the evidence must show beyond a reasonable doubt that the defendant knew when he received the turkeys, if you find he did receive them, that they had been stolen, . . . One of the material elements of this crime is knowledge and intent. If all the other elements of the offense are found to exist, and you also find that the defendant knew he was receiving stolen property, you should find the defendant guilty."

Then follows the portion criticized, and this statement: "The intent with which an act is done is a mental process, and as such generally re-

mains hidden within the mind where it is conceived, and is rarely, if ever susceptible of proof by direct evidence."

In summing up the charge to the jury the court said: "As I have already indicated, in order to find the defendant guilty you must find beyond a reasonable doubt; First, that the defendant, Ben Marcovitz, did, knowingly and intentionally, buy and receive these turkeys; Second, that at the time the said defendant received the same he knew them to be stolen; Third, that at the time the same came into his possession he bought or purchased the same with the intent to deprive the true owners of said turkeys, etc."

The portion of the charge criticized is similar to a quotation from the charge in the case of State v. Denny, 17 N. D. 519, 525, 117 N. W. 869. There the trial court charged, "Guilty knowledge is made out and sufficiently proven to warrant conviction in that respect by proof that the defendant received the property under such circumstances as would satisfy a man of ordinary intelligence and caution that they were stolen." Immediately following was this instruction:

"The jury is further instructed that, if you find that all the facts and circumstances surrounding the receiving of the horses by the defendant were such as would reasonably satisfy and convince a man of defendant's age, intelligence, and business ability that the horses were stolen, then you may in your discretion find the defendant had knowledge that said property was stolen property."

This court held "the first instruction lays down an arbitrary rule." It set up as the standard of knowledge that which "would satisfy a man of ordinary intelligence and caution." It did not make knowledge a personal matter. But the defendant could be convicted only for what he himself knew, not what an average man would know. The second quotation however was not criticized—in fact this court said that under such instruction "the jury was told that they may in their discretion find guilty knowledge on the part of the defendant after applying the rule therein stated." This is what the court did in the case at bar. The knowledge of the defendant was his acquaintance with facts, what he learned and knew about the conditions, and this, being a mental process, could be proven by acts or statements only. In attempting to solve this problem of knowledge the jury can not avoid taking into consideration what a man of the defendant's age, intelligence and

business ability would do and learn. If the facts in this case, known to the defendant were of such a nature as to give knowledge of the theft to a man of the defendant's age, intelligence and business experience, then the jury may consider whether the defendant, being of that class, had such knowledge as is matter of fact. The instruction does not say that after having ascertained this they *must* judge the defendant accordingly. The instruction says, that after having ascertained this, the jury in their discretion may judge the defendant accordingly. All through the instruction it is made clear to the jury that the knowledge required to be proven must be the knowledge of the defendant. That guilt is personal, and that the test of a man's culpability is what he himself knew and thought is a personal one and is determined by what the defendant knew and thought, is the rule in this jurisdiction, in harmony with other jurisdictions. In State v. Hazlet, 16 N. D. 426, 113 N. W. 374, the rule as to a defendant's belief and knowledge, its reasonableness, etc.; is said to be not "what a reasonable, cautious man might or might not do or consider necessary to do under like circumstances, but what he himself, in good faith, honestly believed and had reasonable grounds to believe was necessary for him to do." In determining what this defendant honestly believed or knew regarding the character of the property purchased the jury was instructed to require the state to prove the defendant knew the property was stolen, but in ascertaining this the jury would take all of the surrounding facts and circumstances, including the defendant's age, intelligence and business ability into consideration, and if they found that a man of the defendant's age, intelligence and business ability would know from the surrounding facts and circumstances that the property was stolen, then, in determining whether the state had proved defendant's knowledge beyond a reasonable doubt they would take this into consideration in ascertaining his knowledge and from all of the evidence introduced say whether he in fact, did know—his knowledge being a mental process on his part, and their "discretion" being an act of judgment of the evidence before them.

When we consider the whole charge we find no error has been shown.

The court also charged the jury as follows:

"The finding of stolen property in the possession of another shortly after said property has been stolen raises the presumption of guilt as

against the person in whose possession the same is found, but this presumption, however, is a rebuttable one, and if the possession is explained to the satisfaction of the jury, then this presumption is overcome, and should not be considered as any evidence of the guilt of the accused. The finding of property in the possession of the defendant which has been stolen is, of course, not in itself sufficient to warrant a conviction, but is merely a circumstance to be considered by the jury in passing upon his guilt or innocence."

Appellant says, "This is misleading, confusing, ambiguous and contradictory and unintelligible." The criticism is levelled largely at the use of the term "presumption." It seems to be admitted that had the word "inference" been used so that the jury was instructed that the finding of stolen property in the possession of the accused shortly after it had been stolen was an evidentiary fact from which the jury could infer guilt there would be no difficulty; but that such inference has more persuasive force when the charge is larceny, that it has less weight or none at all when the charge is that of having received stolen property; and that in any event it does not raise the presumption of guilt as against the person in whose possession the same is found.

The instruction complained of is almost identical with an instruction given in the case of State v. Ross, 46 N. D. 167, 179 N. W. 993. This portion of the charge must be taken in connection with those portions dealing with guilty knowledge. In the Ross case the term "presumption" was used. This court said: "The application of this presumption as an evidentiary presumption in larceny cases is well known. . . . It is an evidentiary presumption of guilt deducible from the unexplained possession of property. . . . It is not unfair nor improper to apply this presumption, an evidentiary presumption deducible from the possession of property, equally as well to a person charged with unlawfully receiving stolen property knowing it to be stolen, as to one charged with its original taking."

Therein this court quoted the trial court and used the term "presumption" in the same sense—that is, as a rebuttable presumption, or an inference. It might have been better to have used the terms "inferred" and "inference," or to have stated it to be a fact or circumstance to be considered, but after all, when we read the whole charge, we find this is what the court in effect charged in this case. It was an

inference which the jury could draw if in harmony with the facts. As far back as State v. Rosencrans, 9 N. D. 163, 82 N. W. 422, this court described "recent unexplained possession of stolen property" as "an evidential fact." That is all that the court implied in this case. There could be no misapprehension on the part of the jury.

The defendant has requested the court to charge "the mere naked possession of stolen property raises no presumption that defendant knew that the property had been stolen by another." This instruction requested was too broad, as the recent and unexplained possession of stolen property is an evidentiary fact and an inference of guilt may be drawn therefrom not only in a case where the person is charged, with larceny, but also where charged with receiving stolen property. There was no error in refusing to give the instruction requested.

The court charged the jury: "The corroboration required by law need not extend to every material point, or be sufficient, standing alone, to support a verdict of guilty. If the testimony of an accomplice be corroborated as to some material fact, or facts, the Jury may infer that he speaks the truth as to all," and also refused the following charge: "Corroboration of the testimony of an accomplice is not sufficient to permit conviction of the defendant unless it extends to every material element of the crime charged."

The charge as given is correct and the charge requested is erroneous, as we have already set forth. To require every material statement of the· accomplice to be corroborated by independent testimony would place the court in the situation of saying the testimony of the accomplices is evidence which is properly received but you can not consider it unless it is supported by other testimony which standing by itself would be sufficient to sustain a conviction, and thus render the testimony of the accomplice unnecessary.

Defendant says the court erred in refusing to give the following instruction: "Where circumstances are relied upon as corroboration, these circumstances must be criminative; that is, these circumstances, if the accomplice had not testified at all, must to some extent be inconsistent with the innocence of the defendant of the crime charged," and this instruction: "The mere naked possession of stolen property raises no presumption that defendant knew that the property had been stolen by another."

An examination of the charge shows the court fully and fairly charged the jury regarding the character of the necessary corroborative circumstances, even though not couched in the language requested. The court told the jury "that the testimony of an accomplice should be weighed with great caution,—but if the testimony of an accomplice is corroborated by other credible evidence and carries conviction, and the jury are convinced of its truth, they should give it such weight as they honestly believe it is entitled to." Further the court charged the jury that "crime may be proven by circumstantial evidence as well as by direct testimony of eye witnesses; but the facts and circumstances in evidence should be consistent with each other and with the guilt of the defendant, and inconsistent with any reasonable theory of the defendant's innocence."

The court further charged the jury that the corroborative testimony required was "not sufficient if it merely shows the commission of the offense, or the circumstances thereof; " but the corroborative testimony must be such as tends "to connect defendant with the offense charged."

The court also charged the jury that "the finding of property in the possession of the defendant which has been stolen is, of course, not in itself sufficient to warrant a conviction, but is merely a circumstance to be considered by the jury in passing upon his guilt or innocence."

In determining whether there is error in the charge we must consider the charge as a whole, its general tenor, and its fidelity to the issue involved and the evidence presented on both sides. See State v. Finlayson, 22 N. D. 233, 133 N. W. 298; State v. Rice, 39 N. D. 597, 168 N. W. 369; State v. Gates, 52 N. D. 659, 204 N. W. 350; State v. Greiner, 53 N. D. 558, 207 N. W. 226; State v. Bowe, 57 N. D. 89, 220 N. W. 843.

When we consider the entire charge we find there was no error in refusing to give the instruction as requested. A requested charge need not be given if it is fully covered in the general charge. State v. McGahey, 3 N. D. 293, 55 N. W. 753; State v. Kent (State v. Pancoast) 5 N. D. 516, 67 N. W. 1052, 35 L.R.A. 518; State v. Campbell, 7 N. D. 58, 72 N. W. 935; State v. Ramsey, 31 N. D. 626, 154 N. W. 731; State v. Carter, 50 N. D. 270, 195 N. W. 567.

The last issue raised deals with the ruling of the court on the admis-

sion and rejection of evidence, and its refusal to direct the jury to bring in a verdict of not guilty.

This court has pointed out repeatedly that error can not be predicated on the trial court's refusal to advise the jury to acquit or to direct a verdict of not guilty.

State v. Farrier, 61 N. D. 695, 240 N. W. 872; State v. Albertson, 20 N. D. 512, 128 N. W. 1122; State v. Wright, 20 N. D. 216, 126 N. W. 1023, Ann. Cas. 1912C, 795.

Sixteen of the specifications of error are concerned with the admission and rejection of testimony. We need not examine them in detail. Several of them deal with the complaint that the court unduly limited the cross-examination of the partner Ditch. On the cross-examination defendant sought to show by Ditch that before going into partnership with the defendant he had attempted to enter into partnership with other persons, also his reasons why he wanted to go into partnership with the defendant. There was no error in this. Both Ditch and the defendant admitted that they were in partnership and had been in partnership in the produce business for from eight to ten months.

The defendant offered in evidence some of the books of the company "to show that Mr. Marcovitz had at no time anything to do with them, he relied upon Mr. Ditch at all times;" and these were excluded upon objection. There was no error in rejecting them. The real issue before the jury was whether the defendant, at the time he paid for the turkeys, knew they were stolen. For this reason it is immaterial whether the books showed the prices that theretofore had been paid for turkeys. Ditch stated he told Marcovitz the price being paid for these turkeys and Marcovitz said Ditch did not tell him the price. The books would not help.

Complaint is made because of the refusal of the court to permit the cross-examination of the manager of the Armour Company regarding certain "experts" who had been released from the employment of the Armour Company during the previous three years, and those that quit. We see no connection between this examination and the issues here. In none of these cases was there any offer of proof nor was the court in any way enlightened as to why it was claimed this was material.

Complaint is made in regard to alleged leading questions asked some

of the witnesses. It is unnecessary to analyze them. Even if subject to this objection technically, there was no injury.

When we examine all of the specifications of error we find none has been shown to be of such character as to justify a reversal and therefore the order of the lower court in denying a new trial is affirmed.

NUESSLE, Ch. J., and CHRISTIANSON, BURKE, JJ., and HOLT, Dist. J., concur.

BIRDZELL, J., did not participate, Hon. DANIEL B. HOLT, Judge of the First Judicial District, sitting in his stead.