STATE of North Dakota, Plaintiff-Appellee,

v.

Lionel SMITH, Defendant-Appellant.

Cr. No. 528.

Supreme Court of North Dakota.

Feb. 11, 1976.

Benjamin C. Pulkrabek, Public Defender, Bismarck, for defendant and appellant.

John M. Olson, State's Atty., and Robert P. Bennett, Asst. State's Atty., Bismarck, for plaintiff and appellee; argued by Mr. Bennett.

PAULSON, Judge.

This is an appeal by the defendant Lionel E. Smith from a jury verdict of guilty and a final judgment of conviction in the Burleigh County District Court of the crime of burglary, as well as an appeal from the trial court's order denying Smith's motion for a new trial.

Smith's conviction was for the crime of burglary, which occurred sometime during the night of March 27–28, 1975, of the Buy-Rite Food Center in Bismarck. The State's case at trial was primarily based upon the testimony of Paul Nelson, one of three juvenile accomplices who allegedly aided Smith in committing the offense. Also testifying for the State were Englehart Dressler, manager of the Buy-Rite Food Center; and two Bismarck police officers, Lieutenant Gerald Thiesen and Corporal Fred Frohlich. Also endorsed on the Information as a State witness, but not called during trial, was the name of Dean Weisser, another accomplice in the perpetration of the burglary. Smith was the only witness for the defense.

At trial, Nelson testified that he and Smith and two juveniles broke into the Buy-Rite Food Center sometime after dark on the evening of March 27, 1975, by breaking a rear window with a tire iron. Smith thereupon entered the building, according to Nelson, unlocked the back door to permit the other three to enter, and the four of them loaded three boxes with cigarettes, candy, pop, and other items from the store. In addition, they also took a ten-inch portable television set. Finally, Nelson testified that three of them carried the boxes from the scene; that one person carried the television set; and they all got into Dean Weisser's truck and drove to the Julie Wetch residence.

Englehart Dressler, manager of the Buy-Rite Food Center, testified that he left the building at about 10 p. m. on March 27, 1975; that he latched the back door; and that there were no broken windows in the building when he left it that evening. He further testified that when he arrived at the Food Center the next morning, the rear window had been broken, the back door was unlatched, there was snow blowing in through the broken window and water was standing on the floor inside the building. He also testified that among the missing items was a black jewelry box with a red velvet interior containing about $5.50 in quarters, nickels, and dimes; a diamond engagement ring, and perhaps another brass ring; a ten-inch brown Magnavox television set; about 20–30 cartons of various brands of cigarettes, candy, sausage and other grocery items. Dressler further testified that he identified the merchandise seized by the police in arresting Smith and the three juveniles, stating that the merchandise could be identified by the prices and markings on such items; and he also identified the jewelry box as the one taken from his store, and the engagement ring as the one which was in the jewelry box at that time.

Lieutenant Thiesen testified that he, along with Corporal Frohlich, was inside the Wetch residence at about 11:30 on the night of March 27, 1975; that he heard a knock on the door; that after the door was opened he observed Smith and three other persons standing outside; that there were three boxes on the ground, two of which were in the general vicinity of where Smith was standing—about twenty feet from the door—(although Smith was not holding anything when observed by Lieutenant Thiesen); and that a pickup truck identified as belonging to Dean Weisser was parked at the curb.

Corporal Frohlich testified that he, too, was inside the Wetch residence at about 11:30 on the night of March 27, 1975; that he shouted "police" when he heard a knock on the front door; that, as the door opened, someone unidentified dropped a box onto the ground; that Smith was standing near the bottom of the front steps; that there were three boxes on the ground, one of them near Smith, but that Smith was not holding a box; that he took Smith into custody and searched him; that in Smith's coat pocket he found a glove and some coins, along with two rings—one of them a brass ring and the other one a diamond engagement ring (identified by Dressler as the same ring which had been stored in the jewelry box); and that a jack handle (identified by Nelson as the one used in breaking

the rear window of the Food Center) was found in one of the three boxes. He also identified the jewelry box found in one of the three boxes (which jewelry box was identified by Dressler as being the one which was missing from the store). Finally, Corporal Frohlich, too, identified the pickup truck parked in front of the Wetch residence as belonging to Dean Weisser, one of the other juveniles allegedly involved in the burglary.

Smith, as the only witness for the defense, offered a much different version of events. He denied any participation in the burglary, although he testified that he had indeed been "driving around" with Nelson and the other two juveniles in Weisser's pickup earlier in the day, but added that he had parted company with the three juveniles at about 9:30 p. m. on the 27th of March, 1975, at the Country Kitchen restaurant located on east Main Street in Bismarck. However, Smith testified that, because the restaurant was closed, he walked back to the Wetch residence, where he met Nelson and the other two juveniles just as they were walking toward Wetch's front door. He testified that the other three were carrying boxes; that he did not try to escape; and that he had had seven or eight rings on his person that night. He denies that he had the diamond engagement ring (identified by Dressler as having been in the jewelry box taken from the Food Center), and insinuates that the police officers "planted" the ring in his pocket during their search. On cross-examination, he offered no explanation for the lapse of time between 9:30 p. m.—when, he testified, he had parted company with Nelson and the others—and 11:30 p. m., when the arrests were made at the Wetch residence.

Based upon the evidence summarized above, the jury returned a verdict of guilty. Before submitting the case to the jury, the trial court granted a motion by the State and directed defense counsel not to comment on the failure of the State to call, as a witness at the trial, Dean Weisser, another

accomplice whose name had been endorsed on the Information as a State witness.

Following the jury's verdict, Smith moved for a new trial, contending that the trial court erred in refusing to permit defense counsel to comment on the failure of the State to call Dean Weisser; that excessive heat in the courtroom prevented a fair and impartial trial; and that the evidence was not sufficient to support the jury's verdict of guilty. Subsequent to the denial of Smith's motion for a new trial, he was sentenced to a term of two years in the State Penitentiary. Smith contends that comments made by the trial judge at the sentencing hearing show that the judge relied, at least in part, on the fact that a similar charge was pending in Burleigh County District Court against Smith at the time that the sentence was imposed in this case.

Smith raises three issues for decision in this appeal. They are:

1. Did the trial court err in refusing to permit defense counsel to comment on the State's failure to call Dean Weisser as a witness at the trial?

2. Was there sufficient corroboration of the testimony of Paul Nelson, Smith's accomplice, to sustain the jury's verdict of guilty?

3. Did the trial judge err in sentencing by relying upon a pending criminal charge in determining the sentence to be imposed?

Smith's first contention is that the State's failure to call Dean Weisser as a witness at the trial, although his name was endorsed on the Information, raises an inference that Weisser's testimony would have been unfavorable to the State, and that it was therefore error for the court to direct Smith's counsel not to comment on such inference in his closing argument to the jury.

■ The general rule is that comment by counsel on a party's failure to call a witness is permitted where the circumstances justify an unfavorable inference from the failure of the other party to produce or use an

available witness. *Graves v. United States*, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893); 1 Wharton's Criminal Evidence (13th Ed. 1972) § 148, p. 249; McCormick on Evidence 2nd Ed. (West 1972) § 272, pp. 656–659; 23A C.J.S. Criminal Law § 1099, p. 174. As the United States Supreme Court said in *Graves v. United States, supra:*

> "The rule, even in criminal cases, is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." 150 U.S. at 121, 14 S.Ct. at 41.

An adverse inference does not arise, however, where the witness is equally available to either party, *Luttrell v. United States*, 320 F.2d 462, 465 (5th Cir. 1963); *United States v. Johnson*, 467 F.2d 804 (1st Cir. 1972), *cert. den.* 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973); *State v. Heiser*, 183 Neb. 665, 163 N.W.2d 582 (1968) (applying the corollary that no inference arises when the witness is equally *unavailable* to both parties, here because the witness was outside the jurisdiction of Nebraska); 1 Wharton's Criminal Evidence, *supra* at 250; McCormick on Evidence 2nd Ed. (West 1972), *supra* at 656–657; 23A C.J.S. Criminal Law, *supra* at 175; 2 Wigmore on Evidence (3d Ed. 1940 and 1975 P.Supp.) at § 286, p. 166; when the testimony would be merely cumulative, *United States v. Llamas*, 280 F.2d 392, 393–394 (2d Cir. 1960); *United States v. Johnson, supra* 467 F.2d at 808; 2 Wigmore on Evidence, *supra* at § 286, p. 168; McCormick on Evidence 2nd Ed., *supra*; 1 Wharton's Criminal Evidence, *supra*; or where the witness can be expected to exert a valid privilege which would exclude the anticipated testimony from the record, *Graves v. United States, supra; McClanahan v. United States*, 230 F.2d 919 (5th Cir. 1956) (attorney/client privilege, deemed waived, therefore adverse inference arose against defendant); McCormick on Evidence 2nd Ed., *supra* at § 76,

pp. 155–156, and § 120, p. 254; 2 Wigmore on Evidence, *supra* at § 286, p. 167.

■ The determination of whether or not a potential witness is equally available to either party is largely a question of fact. *McClanahan v. United States, supra* 230 F.2d at 925–926. One factor in making that determination is the physical accessibility of the potential witness. *State v. Heiser, supra*. However, the inquiry is not limited to the question of physical presence or accessibility of the witness by writ of habeas corpus or subpoena, but extends also to a consideration of the witness's disposition and relationship toward the parties, *United States v. Johnson, supra*, and *Luttrell v. United States, supra*; and to a consideration of the nature of the testimony expected, *McClanahan v. United States, supra*.

■ Furthermore, even if the potential witness is available, no adverse inference arises from a failure to call such witness if the testimony would not be superior to that offered or would be, in effect, merely cumulative. *United States v. Llamas, supra; State v. Heiser, supra*. In *Llamas*, the United States Court of Appeals for the Second Circuit declined to reverse the defendant's conviction where he made no showing that the testimony that could be expected from a government informant would provide special information relevant to the case, not already available from other witnesses.

■ Finally, the general rule is that no adverse inference arises from the failure of a party to call a witness whose testimony could be objected to on grounds of a privilege exercisable by such party. *Graves v. United States, supra*; McCormick on Evidence 2nd Ed., *supra* at § 272, p. 658. The application of this doctrine to a situation where it is the witness who has an exercisable privilege is less clear. As explained by Professor Wigmore, in 2 Wigmore on Evidence, *supra* at § 285, p. 167:

> "When the *witness* is *privileged*, and the privilege is *independent of the party's*

*control*, the witness' claim of privilege renders the party unable to use his testimony; but it would seem that the witness should at least have been summoned and asked, for he may waive his privilege." [Emphasis in original.]

In the instant case, the potential witness was Dean Weisser, an accomplice of Smith's in the burglary. The privilege involved is Weisser's privilege against self-incrimination. United States Constitution, Amendments V and XIV; Constitution of North Dakota § 13.

Smith's counsel, during arguments to the trial court on this question, readily admitted that Dean Weisser was equally available, in a physical sense, to both parties. The State had issued a subpoena for Weisser's presence, but the Burleigh County sheriff's office had been unable to effect service of the subpoena upon Weisser during the week before trial. Smith offered nothing to show that Weisser could provide special, relevant information which would be more than merely cumulative in nature.

Furthermore, juvenile proceedings arising out of the same burglary were pending against Weisser at the time of Smith's trial, making it virtually certain that an assertion of Weisser's privilege against self-incrimination would have prevented any of his testimony from entering the record. In fact, if the State had called Weisser and forced him, from the witness stand, to assert his privilege against self-incrimination, authority exists which would permit Smith to now argue that his own Fifth Amendment rights were violated. *See* McCormick on Evidence 2nd Ed., *supra* at § 120, p. 255.

■ Smith contends, however, that the State had it uniquely within its power to procure Weisser's testimony by granting the witness immunity from prosecution un-

der the provisions of § 31–01–09, N.D.C.C. The grant of immunity, whether denominated "use" or "transactional", is historically an investigative tool used by the State to obtain information about criminal activity which would otherwise be unobtainable. *See generally Kastigar v. United States*, 406 U.S. 441, 446–447, 92 S.Ct. 1653, 1656–1657, 32 L.Ed.2d 212 (1972); 8 Wigmore on Evidence (J. McNaughton Rev.1961) § 2281. Under § 31–01–09, N.D.C.C., the grant of immunity is not within the sole discretion of the prosecution, but is within the province of the trial court to determine. The granting of immunity is not to be taken lightly, because its use not only precludes prosecution of the witness, but also interferes with such witness's constitutional protection against self-incrimination. *See, e. g., Kastigar v. United States, supra.* We do not believe that the State is obligated to request immunity for a witness who, to the State's knowledge, would only offer evidence cumulative in nature and therefore not probative at the accused's trial. Such was the situation presented in the instant case. Consequently, refusal of the State to request immunity in this case is not a factor to be considered in determining the propriety of the trial court's direction to Smith's attorney that comment to the jury on Weisser's absence would not be permitted.

■ Based upon all of the above considerations, and especially upon the failure of Smith to provide the trial court with any information which would tend to show that Weisser's testimony would be more than merely cumulative in nature, we cannot say that the trial court erred in directing that defense counsel refrain from commenting on the State's failure to call Dean Weisser as a witness at Smith's trial.[1]

Smith's second contention on this appeal is that the testimony of Paul Nelson, an

---

1. We believe that the State followed the preferred procedure in this case by requesting that the trial court consider the motion to restrict defense counsel's comments on the issue of the State's failure to call Dean Weisser. We agree with the U. S. Court of Appeals for the District of Columbia, that

an advance ruling should be sought from the trial court, so that the record can be established by both parties as to the witness's availability, anticipated testimony, and relationship to the parties. *Gass v. United States,* 135 U.S.App.D.C. 11, 416 F.2d 767, 775–776 (1969).

accomplice of Smith's in the burglary, was not sufficiently corroborated by independent evidence linking Smith to the offense, and that, therefore, the evidence was insufficient as a matter of law to support the jury's verdict of guilty.

Section 29–21–14, N.D.C.C., provides:

"*Testimony of accomplice—Corroboration required.*—A conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

■ The State asserts, however, that such issue is not properly before this Court. Its position is that Smith waived any right to present such issue to this Court by not requesting that the trial court instruct the jury on the issue of corroboration. Such contention, however, misapprehends the nature of Smith's claim.

Smith's objection is not that the jury was improperly instructed on the law. Rather, his claim is that the evidence introduced by the State is insufficient, as a matter of law, under § 29–21–14, N.D.C.C., to sustain his conviction. We believe that Smith, by moving for a new trial, properly preserved his contention that the evidence was insufficient to support the jury's verdict.

In *State v. Helmenstein,* 163 N.W.2d 85 (N.D.1968), this Court reviewed the cases which dealt with the issue of corroboration,[2] and held, in paragraphs 1, 2, and 3 of the syllabus, that:

"1. In North Dakota, a conviction may not be had upon the testimony of an accomplice unless his testimony is corroborated by such other evidence as tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the com-

mission of the offense or the circumstances thereof. Sec. 29–21–14, N.D.C.C.

"2. Every material fact testified to by an accomplice need not be corroborated. All that is required is that the corroboration tend to connect the defendant with the commission of the offense.[3]

"3. An accomplice is one who knowingly, and with criminal intent, participates, associates, or concurs with another in the commission of a crime." [Footnote added.]

In *State v. Anderson,* 172 N.W.2d 597 (N.D.1969), this Court held, in paragraphs 4 and 5 of the syllabus, that:

"4. Corroboration may be furnished by evidence of facts and circumstances which tend to connect the defendant with the commission of the crime. It is not necessary that the corroborating evidence shall cover every material fact testified to by the accomplice, or be sufficient, in itself, to warrant a conviction or to establish a prima facie case. It is sufficient if it corroborates the accomplice as to some material fact, or facts, and tends to connect the defendant with the commission of the offense charged.

"5. The weight to be given corroborating evidence is a matter for the jury. A motion for a new trial on grounds of insufficiency of the evidence is addressed to the trial court's sound discretion. Such court's discretion with respect to the sufficiency of the evidence will not be disturbed on appeal unless an abuse of discretion is shown."

And the Court explained, at 172 N.W.2d 601:

"However, the state is not called upon to point to some single or isolated fact which, in itself, unrelated to other proven facts, will be sufficient corroboration. It is the combined and cumulative weight of

---

**2.** *State v. Todd,* 62 N.D. 479, 244 N.W. 25 (1932); *State v. Marcovitz,* 63 N.D. 458, 248 N.W. 481 (1933); *State v. Foster,* 69 N.D. 428, 287 N.W. 517 (1939).

**3.** *Accord, State v. Binns,* Syll. ¶ 6, 194 N.W.2d 756 (N.D.1972).

the evidence, furnished by nonaccomplice witnesses, which supplies the test. *State v. Pusch, supra.* [77 N.D. 860, 46 N.W.2d 508 (1950)]."

In *Helmenstein, supra* 163 N.W.2d at 89, this Court reversed a burglary conviction which was based solely upon the testimony of five accomplices, because the State offered no independent evidence connecting the defendant in that case to the burglary. All the State had to point to for support of its case, aside from the accomplice's testimony, was testimony by the store owner that his store had been burglarized and that some merchandise had been taken. His testimony did nothing more than establish that an offense had been committed. It in no way connected the defendant with such offense.

■ In contrast, in the instant case the State presented evidence which tended to connect Smith with the March 27, 1975, burglary of the Buy-Rite Food Center. The store manager not only testified that a burglary had been committed and that certain merchandise had been taken, but also identified much of the merchandise recovered by the police at the time they made the arrests in this case. Furthermore, the manager specifically identified a diamond engagement ring, recovered by the police, as being the same ring which was taken in the burglary.

Corporal Frohlich of the Bismarck Police Department testified that the diamond engagement ring identified by the store's manager was found in Smith's possession at the time of the arrest; that boxes containing merchandise subsequently identified by the store's manager as having come from the Buy-Rite Food Center were recovered at the same time as Smith and the three juveniles were arrested; that the same pickup which Paul Nelson testified had been used by the four during the burglary was also present at the Wetch residence when the arrests occurred; and that the tire iron which Nelson testified had been used by Smith to break the rear window at the Buy-Rite Food Center was found in one of the three boxes seized by the police during said arrests.

As this Court said, in *State v. Marcovitz,* 63 N.D. 458, 248 N.W. 481, 484 (1933):

"But the corroboration of accomplices need not include the corroboration of every material fact testified to by the accomplices. These accomplices are witnesses themselves, and their credibility is for the jury. Thus it is not necessary that the corroborative testimony be in itself strong enough to support a conviction. The corroboration must be such as to have a tendency to connect the defendant with receiving stolen property knowing it to be stolen when he received it. If there is such corroborative testimony, then the jury may from that infer that the accomplices spoke the truth as to other matters—they being the judge of the credibility of the witnesses. See *State v. Dodson,* 23 N.D. 305, 136 N.W. 789; *State v. Reilly,* 22 N.D. 353, 133 N.W. 914. *The purpose of corroborative testimony is to show that the accomplices are reliable witnesses and worthy of credit;* but must be on that phase of their testimony which tends to connect the defendant with the commission of the crime. See *State v. Seitz et al.,* 194 Iowa, 1057, 187 N.W. 695; *Moody v. State,* 13 Okl.Cr. 327, 164 P. 676." [Emphasis added.]

We therefore conclude, in the instant case, that the evidence hereinbefore set forth, as well as the other evidence contained in the record, is substantial corroborating evidence tending to connect Smith with the burglary, and that, therefore, the evidence is sufficient, as a matter of law, to support the jury's verdict of guilty.

Smith's final challenge is to the sentence imposed by the trial judge after his conviction of burglary. Smith was sentenced under the elective provisions of the North Dakota Criminal Code (Title 12.1, N.D.C.C.), which became effective on July 1, 1975, although his offense occurred prior to such

effective date.[4] Under the North Dakota Criminal Code, burglary is classified as a class C felony. § 12.1–22–02, N.D.C.C. (except it is a class B felony in certain situations not applicable to the instant case). As a class C felony, burglary carries a maximum penalty of five years' imprisonment, a fine of five thousand dollars, or both. § 12.1–32–01(3), N.D.C.C. Smith was sentenced to a maximum term of two years in the State Penitentiary.

■ The State contends that the question concerning the validity of Smith's sentence is not properly before this Court for review. It asserts that Smith failed to preserve his right to have the validity of his sentence reviewed by not first presenting his objections to the trial court. While we agree with the State that Smith's failure to contest the sentence in the district court after its imposition may result in the loss of an opportunity to seek review by this Court, we nonetheless conclude that, in the instant case, the issue will be disposed of on its merits, rather than upon the asserted procedural deficiency.

■ In general, trial judges have a wide discretion in determining the length of sentences imposed, especially where the sentence actually imposed is well within the statutory limits, *U. S. v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *State v. Ankney,* 195 N.W.2d 547, 553 (N.D. 1972). The sentence imposed on Smith in the instant case is well within the statutory limits.

However, Smith's contention differs from the usual challenge to a sentence imposed by the trial judge. In the instant case, Smith contends that the sentencing judge improperly considered a pending criminal charge in determining the severity of the sentence imposed for his burglary conviction in the case now before this Court. He asserts that the trial judge's consideration of the pending criminal charge, in this instance, violated his constitutionally protected right to trial by jury on the pending charge, U. S. Constitution, Sixth Amendment; Constitution of North Dakota § 7; and to due process of law, U. S. Constitution, Fifth and Fourteenth Amendments, Constitution of North Dakota § 13. Consequently, Smith claims, the factors considered by the trial judge as the foundation upon which the length of the sentence was determined were constitutionally impermissible factors; hence, the sentence imposed was erroneous.

■ During the course of the sentencing hearing in this case, the trial judge made reference to both a charge pending against Smith and to an earlier charge on which he had been acquitted. However, the trial judge also unequivocally declared during the course of such hearing that he could not consider such charges in his determination of the sentence to be imposed for the conviction in the instant case. Such declaration was a correct statement of the law. Nevertheless, at the time when sentence was actually imposed, the trial judge said:

> "It is the judgment and sentence of this Court that you be confined in the State Penitentiary for a period of two years, but I'm going to give you full credit for the time that you've spent in jail, *and I'm also asking that when his next case is brought up—whether I hear it or whether someone else hears it—that I be informed of the outcome of that case, because it will bear upon the question of whether or not I will want to reconsider the sentence that I'm imposing today."* [Emphasis added.]

It appears from the record that the trial judge was planning to review the sentence

---

4. Section 12.1–01–01(3)(b), N.D.C.C., provides:

"3. In cases pending on or after the effective date of this title, and involving offenses committed prior thereto:

"(b) The court, with the consent of the defendant, may impose sentence under the provisions of this title which are applicable to the offense and the offender."

imposed, by using the provisions of Rule 35, N.D.R.Crim.P., which states:

## "RULE 35. CORRECTION OR REDUCTION OF SENTENCE

"The sentencing court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The sentencing court may reduce a sentence within one hundred twenty days after the sentence is imposed, or within one hundred twenty days after receipt by that court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within one hundred twenty days after entry of any order or judgment of the supreme court of the United States denying review of, or having the effect of upholding, a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law."

In addition to the statements made by the trial judge at the sentencing hearing, he filed a written statement as to the reasons for imposing the sentence of two years' imprisonment in the State Penitentiary. Such statement is filed with the record in compliance with § 12.1–32–02(5), N.D.C.C., and states:

## "STATEMENT OF REASONS FOR SENTENCE OF IMPRISONMENT

"The undersigned District Judge certifies that the reasons for the sentence of imprisonment imposed in the above-entitled action are shown in the following Sentencing Factors:

"1. The defendant's criminal conduct caused or threatened serious harm to another person or his property.

"2. The defendant planned or expected that his criminal conduct would cause or threaten serious harm to another person or his property.

"3. There were no substantial grounds which tended to excuse or justify the defendant's conduct.

"4. The imprisonment of the defendant would not entail undue hardship to himself or his dependents.

"5. The defendant is neither elderly nor in poor health.

"6. The defendant is in need of correctional treatment which can most effectively be provided if he is placed in total confinement.

"7. It would unduly depreciate the seriousness of the offense to impose a sentence other than total confinement.

"8. The defendant conspired with and assisted juveniles in the commission of a felony.

"Dated this 24th day of July, 1975.

"BY THE COURT:

"/s/ Alfred A. Thompson
"District Judge."

Such factors are not only highly relevant to a determination of the proper sentence to be imposed by the trial judge, but also show that a variety of important and highly relevant factors were involved in the judge's final decision on the sentence imposed in the instant case.

■ We conclude that the trial court did not consider the pending charge; but, assuming for the sake of argument only that it did, a finding that the trial judge improperly considered such information, however, would not end our inquiry.[5] The sentence

---

**5.** The United States Supreme Court, in *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), held that due process was not violated by a consideration of information in a presentence report concerning other burglary offenses allegedly committed by the defendant, but in which no convictions were obtained.

The issue in *Williams, supra,* is not before us at this time, so we make no determination on the merits of considering such information where specific charges are not pending at the time of sentencing.

will be set aside only where there is a showing that the trial judge substantially relied upon the impermissible factor in determining the severity of the sentence to be imposed. *People v. Potts,* 55 Mich.App. 622, 223 N.W.2d 96 (1974).

In the instant case, the record shows that the trial judge considered a wide variety of significant factors in determining the severity of the sentence to be imposed. While we cannot condone a practice of reliance, to any degree, on impermissible factors in the sentencing determination, no showing was made in this case that the trial judge substantially relied upon the pending criminal charge in imposing the two-year prison sentence on Smith. Not only did the trial judge make it clear in his written statement that other, more important, factors were involved, but he unequivocally declared during the course of the sentencing hearing that he could not consider the pending criminal charge in fixing the sentence to be imposed for the conviction rendered in the instant· case.. Absent a showing that the trial judge primarily relied upon constitutionally impermissible criteria, we cannot say that the error, if any, committed in this case was of such magnitude as to justify vacation of the sentence.

The judgment and order denying motion for a new trial of the district court is therefore affirmed.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.