STATE of North Dakota, Plaintiff and Appellee,

v.

Frank **KAUFMAN,** Defendant and Appellant.

Cr. No. 770.

Supreme Court of North Dakota.

Oct. 5, 1981.

Charles J. Gilje, State's Atty. and John E. Greenwood, Asst. State's Atty., Jamestown, for plaintiff and appellee; argued by Mr. Greenwood.

Hjellum, Weiss, Nerison, Jukkala & Wright, Jamestown, for defendant and appellant; argued by Charles M. Carvell, Jamestown.

PAULSON, Justice.

Frank Kaufman was convicted in the Stutsman County Court of Increased Jurisdiction of theft of property lost, mislaid, or delivered by mistake, under § 12.1–23–04 of the North Dakota Century Code, and was sentenced to serve six months in the Stutsman County jail with 2½ months suspended, pay a $100 fine and $79.75 in restitution. Kaufman appeals his conviction and sentence. We affirm.

In November and December, 1980, the Jamestown West End Hide and Fur Company, a junk dealership, purchased several large rolls of scrap copper wire from Otter Tail Power Company. This wire was stored in the hide and fur company's open yard. In early December, 1980, Mr. Archie Oster, a partner in the company, noticed that several rolls of wire were missing. In checking with the manager of Porter Brothers, another junk dealership in the area, Oster learned that a similar roll of wire had been purchased by Porter Brothers on December 4, 1980, from Frank Kaufman. At trial, Oster identified the wire that Porter Brothers had purchased from Kaufman as the same wire which had been missing from the hide and fur company's yard.

Jack Miller, Deputy Sheriff of Stutsman County, testified that he had contacted Kaufman during his investigation of the theft and that Kaufman had stated that he found the wire "out by Windsor". The trial judge found Kaufman guilty of theft of property "lost, mislaid, or delivered by mistake", § 12.1–23–04, N.D.C.C., and sentenced him to six months in the Stutsman County jail, with 2½ months suspended, and that he pay a $100 fine and $79.75 in restitution. Kaufman appeals his conviction and sentence.

Three issues are presented on appeal:
1. Is property which is stolen and later abandoned by the thief "lost" for the purpose of § 12.1–23–04, N.D.C.C., which makes appropriation of "lost" property unlawful?
2. Was the evidence sufficient to support the conviction?
3. Did the trial judge consider impermissible factors in sentencing which warrant vacation of the sentence?

I

Kaufman's first contention is that the copper wire was stolen from the hide and fur company's yard, and, therefore, was not "lost" and could not be the basis of a prosecution under § 12.1–23–04, N.D.C.C., which provides:

"*12.1–23–04. Theft of property lost, mislaid, or delivered by mistake.*—A person is guilty of theft if he:

"1. Retains or disposes of property of another when he knows it has been lost or mislaid; or

"2. Retains or disposes of property of another when he knows it has been delivered under a mistake as to the identity of the recipient or as to the nature or amount of the property,

and with intent to deprive the owner of it, he fails to take readily available and reasonable measures to restore the property to a person entitled to have it."

Although this court has never previously been presented with this issue, courts in other jurisdictions have indicated that property which is stolen and abandoned by the thief is indeed "lost" to the original owner. For example, in *Automobile Insurance Co. of Hartford v. Kirby*, 25 Ala.App. 245, 144 So. 123 (1932), that Court stated that "when property is stolen and is afterwards abandoned by the thief at a place unknown to the owner, such property is lost within the meaning of our statute". *Id.* 144 So. at 124. See also *Flood v. City National Bank of Clinton*, 218 Iowa 898, 253 N.W. 509 (1934); *First National Bank of Ottawa v. Brown*, 117 Kan. 339, 230 P. 1038 (1924); *In re O'Neil*, 179 Misc. 455, 39 N.Y.S.2d 82 (Sup. Ct.1943).

Although Title 12.1, N.D.C.C., does not provide a definition of "lost", this court has previously discussed the term. In *State v. Brewster*, 72 N.D. 409, 7 N.W.2d 742 (1943), the court, in discussing a predecessor to § 12.1–23–04, N.D.C.C., noted that "The term 'lost' is concerned with *the involuntary change of location or inability to find*". *Brewster, supra* 7 N.W.2d at 744 (emphasis added). Applying this definition to the evidence in the instant case, it is clear that the location of the hide and fur company's wire had been changed and it could not be found by the company at the time that Kaufman found it. We therefore conclude that the stolen wire was "lost" when Kaufman found it.

Support is lent to this conclusion by the anomalous result which would follow from the interpretation of the statute urged by Kaufman. Kaufman would have this court hold that stolen property abandoned by the thief is not lost and, therefore, cannot be the basis for prosecution under § 12.1–23–04, N.D.C.C. If this interpretation were adopted, a person who found property, believing it to be lost or mislaid, and who thereafter sold it or otherwise deprived the owner of possession might escape prosecution merely because, unbeknownst to him, the property had previously been stolen from the true owner.

Such a result would be contrary to the purpose of Chapter 12.1–23, N.D.C.C. Section 12.1–23–04 was adopted verbatim from § 1734 of the Final Report of the National Commission on Reform of Federal Criminal Laws. This court has previously indicated that the Commission's Working Papers may be considered when construing provisions of North Dakota's Criminal Code. *State v. Hanson*, 302 N.W.2d 399, 402 (N.D.1981); *State v. Unterseher*, 289 N.W.2d 201, 203 (N.D.1980); *State v. Bourbeau*, 250 N.W.2d 259, 264 (N.D.1977). The Comment to § 1734 indicates that the intent behind such section is to make the appropriation of found or discovered property constitute theft:

> "The point, of course, is that the actor is just as culpable if he intends to appropriate property he knows to belong to another whether he takes it, finds it, or discovers it as it is being mistakenly delivered to him. And it is just as clear that the extent of his criminal liability should not turn on technical differences between whether the money was lost, mislaid, or simply placed somewhere for safekeeping. This, in any event, is the premise of the proposal to make appropriation of found or discovered property theft just like any other kind of theft." [Working Papers of the National Commission on Reform of Federal Criminal Laws, Vol. II, p. 939 (1970)].

A result which would relieve a person from criminal liability simply because of the occurrence of a fortuitous act such as an unknown prior theft of the property would defeat the purpose of the statute.

We hold that property which is stolen and later abandoned by the thief is "lost" for the purposes of § 12.1–23–04, N.D.C.C., making appropriation of lost property unlawful.

## II

Kaufman also contends that the evidence at trial was insufficient to support a verdict of guilty of the crime charged. Specifically, he contends that the State failed to prove that the copper wire which he sold to Porter Brothers was the "property of another", and that the State failed to prove that he knew the property was lost or mislaid.

We have consistently held that a verdict based upon circumstantial evidence is accorded the same presumption of correctness as other verdicts and will not be disturbed on appeal unless the verdict is unwarranted. *State v. Olson*, 290 N.W.2d 664, 670 (N.D.1980); *State v. McMorrow*, 286 N.W.2d 284, 286 (N.D.1979). The role of the Supreme Court on appeal is to merely review the record to determine if there is competent evidence which allowed the factfinder to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. *State v. Olson, supra* 290 N.W.2d at 671.

### A. Identification of the Property

Kaufman first contends that there was insufficient evidence to establish that the copper wire which he sold to Porter Brothers was the same wire which was missing from the hide and fur company's yard. Section 12.1–23–04, N.D.C.C. provides that it is unlawful to retain or dispose of "property of another" when the actor knows the property is lost or mislaid. "Property of another" is defined in § 12.1–23–10(7), N.D.C.C.:

> *"12.1–23–10. Definitions for theft and related offenses.* In this chapter:

"7. 'Property of another' means property in which a person other than the actor or in which a government has an interest which the actor is not privileged to infringe without consent, regardless of the fact that the actor also has an interest in the property and regardless of the fact that the other person or government might be precluded from civil recovery because the property was used in an unlawful transaction or was subject to forfeiture as contraband. . . . 'Owner' means any person or a government with an interest in property such that it is 'property of another' as far as the actor is concerned."

Thus, the State must establish that someone other than the defendant had an interest in the property which the defendant was not privileged to infringe without consent in order to support a conviction under § 12.1–23–04, N.D.C.C.

We find ample evidence in the record to support the conclusion that Kaufman had disposed of "property of another". Mr. Oster, a partner in the Jamestown West End Hide and Fur Company, testified that such large quantities of copper wire on rolls were normally purchased only from Otter Tail Power Company, while smaller purchases from individuals usually were in the form of loose, unrolled wire. He further testified that the hide and fur company burned off the rubber coating on all copper wire which was purchased from Otter Tail Power Company. The copper wire purchased by Porter Brothers from Kaufman had had the rubber coating burned off. The close proximity in time between the theft from the hide and fur company and Kaufman's sale of the wire to Porter Brothers also lends support to the conclusion of the trial court that the wire purchased by Porter Brothers from Kaufman was the same wire which had been stolen from the hide and fur company. We conclude that there was competent evidence which allowed the court to draw an inference that Kaufman had disposed of "property of another".

## B. Proof of Defendant's Knowledge

Kaufman also argues that the State failed to prove beyond a reasonable doubt that he *knew* the property was lost or mislaid. An actor's *mens rea* is a question of fact. *See State v. Howe*, 247 N.W.2d 647, 655 (N.D.1976). Thus, our review is again limited to a perusal of the record to determine whether there is competent evidence fairly warranting a conviction.

For the purposes of Title 12.1, N.D.C.C., a person acts "knowingly" if, "when he engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, whether or not it is his purpose to do so". § 12.1–02–02(1)(b), N.D.C.C. Thus, "knowledge" need not be *absolute*, but merely "a firm belief, unaccompanied by substantial doubt".

Kaufman points out that the knowledge requirement is a subjective test, rather than an objective one, citing *State v. Marcovitz*, 63 N.D. 458, 248 N.W. 481 (1933). The court in *Marcovitz*, however, went further, and stated that the finder of fact may consider all of the surrounding facts and circumstances in determining whether the actor had the requisite knowledge, *Marcovitz, supra* 248 N.W. at 485–486:

"In *State v. Hazlet*, 16 N.D. 426, 113 N.W. 374, 380, the rule as to a defendant's belief and knowledge, its reasonableness, etc., is said to be, not 'what a reasonably cautious person might or might not do or consider necessary to do under the like circumstances, but what he himself in good faith honestly believed and had reasonable grounds to believe was necessary for him to do'. In determining what this defendant honestly believed or knew regarding the character of the property purchased, the jury was instructed to require the state to prove the defendant knew the property was stolen, but in ascertaining this the jury would take all of the surrounding facts and circumstances, including the defendant's age, intelligence, and business ability, into consideration, and, if they found that a man of the defendant's age, intelligence, and business ability would know

from the surrounding facts and circumstances that the property was stolen, then, in determining whether the state had proved defendant's knowledge beyond a reasonable doubt, they would take this into consideration in ascertaining his knowledge, and from all of the evidence introduced say whether he in fact did know—his knowledge being a mental process on his part, and their 'discretion' being an act of judgment of the evidence before them."

The court in *Marcovitz* was merely recognizing that proof of what a particular person in fact subjectively believes will of necessity *always* be by circumstantial evidence. It is impossible for the factfinder to step into the shoes of the defendant to see what was actually in his mind at the time the wrongful conduct was engaged in. The factfinder must make its determination based upon whether the facts and circumstances would have caused this particular defendant to "know" the requisite facts. Thus, the court, as factfinder in the instant case, was allowed to consider all of the surrounding facts and circumstances in determining whether Kaufman knew that the copper wire was lost or mislaid.

Our inquiry is therefore whether the surrounding facts and circumstances support a finding that Kaufman knew or had a firm belief, unaccompanied by substantial doubt, that the copper wire which he found was lost or mislaid. The trial court may have considered several factors in reaching its conclusion: the sheer bulk of the wire (132 pounds), the fact that it was rolled and the rubber coating had been burned off, the intrinsic value of copper, and the fact that Kaufman sold the wire shortly after finding it. Kaufman presented no evidence at trial to refute the State's evidence that he knew that the wire was stolen. We therefore conclude that there was sufficient evidence allowing the court to conclude that Kaufman knew the wire was lost.

Based upon the foregoing reasoning, we conclude that the evidence is sufficient to support the verdict.

## III

Finally, Kaufman contends that his sentence should be vacated because the trial court considered an impermissible factor in sentencing and because the Legislature's subsequent amendment of the theft-grading statute indicates an intent that punishment for the offense be lessened.

Kaufman contends that the trial court considered the possibility that he had stolen the wire from the hide and fur company's yard in determining the sentence imposed. A review of the sentencing transcript, however, indicates that the trial judge, although mentioning the circumstances of the theft, did not rely upon this in determining Kaufman's sentence:

"But I think when it comes to sentencing, it makes a difference how that possession was obtained and that's not before the Court at this time and I'm not going to force the issue if nobody wants to. But there was evidence at the trial, that the stuff was removed from a place of business. Have I thoroughly confused everyone? I guess I will have to accept the evidence, well, I said I wouldn't stir it up so I won't."

Although the court noted that "the stuff was removed from a place of business", when taken in context it appears that the judge indicated he would *not* take this into account when determining the sentence.

We have consistently held that a sentence will be set aside only if there is a showing that the trial judge substantially relied upon an impermissible factor in determining the severity of the sentence. *State v. Lesmeister*, 293 N.W.2d 875, 876–877 (N.D. 1980); *State v. Rudolph*, 260 N.W.2d 13, 16 (N.D.1977); *State v. Smith*, 238 N.W.2d 662, 672–673 (N.D.1976). In the instant case, there were other significant factors which the trial court may have considered in sentencing. Because there is no evidence to indicate that the trial court substantially relied upon an impermissible factor and there were other factors which the court may have considered in sentencing, we decline to vacate the sentence.

Kaufman's final argument is equally without merit. Kaufman points to the Legislature's 1981 amendment of § 12.1–23–05, N.D.C.C., the theft-grading statute, as an indication that the sentence imposed in the instant case is too severe. At the time the occurrences in this case (including the trial and sentencing) took place, § 12.1–23–05, N.D.C.C., provided that theft of property valued over $50 was a class A misdemeanor. Section 12.1–23–05, N.D.C.C., was amended by the 1981 Legislature (S.L.1981, ch. 156, § 1) to provide that theft of property valued under $250 is a class B misdemeanor. Thus, a charge of theft of the amount involved in the instant case ($79.75) would, after July 1, 1981, be reduced to a class B misdemeanor, and the sentence imposed here would be in excess of the maximum sentence prescribed by the 1981 amendment of § 12.1–23–05, N.D.C.C.

The 1981 amendment of § 12.1–23–05, however, has no effect on the outcome of the instant case. The offense in question was committed several months before the effective date of the 1981 amendment. Section 1–02–10, N.D.C.C., provides that no part of the North Dakota Century Code is retroactive unless it is expressly declared to be so. § 1–02–10, N.D.C.C. This court has repeatedly pointed to the broad application of this statute when holding that particular statutes were not to be applied retroactively. *Reiling v. Bhattacharyya*, 276 N.W.2d 237, 240–241 (N.D.1979); *Young v. White*, 267 N.W.2d 799, 802 (N.D.1978); *Heddon v. North Dakota Workmen's Compensation Bureau*, 189 N.W.2d 634, 638 (N.D.1971); *Scranton Grain Co. v. Lubbock Machine and Supply Co.*, 186 N.W.2d 449, 453 (N.D.1971). The 1981 amendment to § 12.1–23–05, N.D.C.C., was not expressly declared to have retroactive application, and therefore has no effect on the outcome of the instant case. The sentence imposed on Kaufman was within the statutory limits in force at the time the offense was committed, and will not be vacated on appeal.

In light of the foregoing reasoning, we affirm.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.